# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ZINCO-SHERMAN, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-06-1081 |
| § | |
| ADEPT FOOD SOLUTIONS, INC., § | |
| also doing business as ADEPT § | |
| SOLUTIONS, INC. and RUSSELL § | |
| BIANCHI, an individual, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER SETTING OUT
## FINDINGS AND CONCLUSIONS

Zinco-Sherman, Inc. filed this lawsuit and application for a preliminary injunction to protect its trade secrets and proprietary information. This court set the initial preliminary injunction hearing on April 3, 2006. (Docket Entry No. 3). That setting was continued by agreement of the parties and reset to April 13, 2006. (Docket Entry No. 8). Before the hearing, defendants filed a motion seeking to dismiss plaintiff's claims for lack of proper service, improper venue, and personal jurisdiction. (Docket Entry No. 11). At the hearing, plaintiff offered the testimony of its president, Sam Ali-Ahmad, and introduced exhibits into evidence. After considering the pleadings, the motions, the evidence, the arguments of counsel, and the applicable law, this court grants the application for a preliminary injunction based on the findings of fact and conclusions of law set out below.

Adept Food Solutions, Inc. and its president, Russell Bianchi, are properly before this court. Bianchi and Adept Food Solutions, with Ahmad and Zinco-Sherman, developed, blended, and tested the proposed reduced sugar product eventually known as REPLACE™ over an extended period. This work involved significant contacts with the State of Texas related to the subject matter of this case. Bianchi traveled to the State of Texas at least twice while performing this work. The parties contemplated a manufacturing plant and offices to make and market the proposed reduced sugar product in Texas. Adept Food Solutions and Bianchi had an extended relationship with Zinco-Sherman, Inc. and Ahmad and contemplated a continuing relationship to be performed largely in Texas. This court finds that it has personal jurisdiction over the defendants, that venue is proper in this court, and that service was properly effected.

This court finds that the formula for the product, including the ingredients and their amounts, are trade secrets and proprietary information under Texas law. "To state a claim for trade secret misappropriation under Texas law, a plaintiff must (1) establish that a trade secret existed; (2) demonstrate that the trade secret was acquired by the defendant through a breach of a confidential relationship or discovered by improper means; and (3) show that the defendant used the trade secret without authorization from the plaintiff." *Gen. Univ. Sys., Inc. v. HAL, Inc.*, 379 F.3d 131, 149–50 (5th Cir. 2004). To determine whether there is a trade secret protected from disclosure or use, a court must examine six "relevant but nonexclusive" criteria: "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the

business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Gen. Univ. Sys.*, 379 F.3d at 150 (citing *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003)); *see also Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.–Houston [1st Dist.] 1998). The party claiming a trade secret need not satisfy all six factors "'because trade secrets do not fit neatly into each factor every time.'" *Id.* (citing *Bass*, 113 S.W.3d at 740).

The evidence establishes a likelihood of success as to each of these elements. The formula is only known to the parties. Plaintiff has taken steps to prevent disclosure of the information. The information is critical to the plaintiff's plan to manufacture and market the REPLACE™ product. Over the last nine years, Zinco-Sherman spent a considerable amount of time and effort to create this reduced sugar sweetener, which is intended to be different than those currently available. The work and time required are evidence of the difficulty others would have in acquiring the information, and the evidence showed that reverse-engineering was not practically available.

This court also finds that Adept Solutions, Inc. and Russell Bianchi acquired the trade secrets by virtue of their confidential relationship with Zinco-Sherman. Although the parties did not execute a written confidentiality or noncompete agreement, Texas law does not require a formal written confidentiality agreement to establish a confidential or fiduciary

3

relationship. *Gen. Univ. Sys.*, 379 F.3d at 152 n.55 (noting that, under Texas law, the absence of an express contractual requirement of confidentiality is a factor the court may consider but is not determinative of whether a duty of confidentiality existed); *W.C. Phillips v. Frey*, 20 F.3d 623 (5th Cir. 1994) (explaining that "a voluntary disclosure made within the periphery of a confidential relationship eliminates the need to take further precautions to secure the trade secret" and indicating that one may create such a relationship "if holder reveals [the secret] to another in confidence and under implied obligation not to use or disclose it") (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 474 (1974) (other citations removed); *T-N-T Motorsports*, 965 S.W.2d at 22 (holding that, "[w]hen a claim of improper disclosure or use of trade secrets arises from a confidential relationship, the injured party is not required to rely upon an express agreement that the offending party will hold the trade secret in confidence."). "Under Texas law, a partnership can be considered a confidential relationship, and participant in a joint venture are often held to owe duties to one another." *Gen. Univ. Sys.*, 379 F.3d at 151.

A court should consider four factors when deciding whether to grant a preliminary injunction: whether the plaintiff will be irreparably harmed if the injunction does not issue; whether the defendant will be harmed if the injunction does issue; whether the public interest will be served by the injunction; and whether the plaintiff is likely to prevail on the merits. *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 n.34 (citations omitted). Zinco-Sherman has met each of these factors. Zinco-Sherman has shown a likelihood of success on the merits and that it will suffer irreparable harm if a preliminary injunction is not

issued.  Bianchi's emails make clear his intent to use the trade secrets and confidential information for his own purpose, breaching the confidential relationship with plaintiff. Defendants counsel argues that there is no evidence that Bianchi has in fact undertaken any activity to violate the trade secrets of Zinco-Sherman.  This court finds that Russell Bianchi, as president of Adept Food Solutions, Inc., has threatened to misappropriate and use the formulas and other trade secrets and confidential information of Zinco-Sherman.  On March 18, 2006, he stated in an email to Ahmad, "[t]herefore, it is my decision to take my formula, develop a new team, if or when possible, and move forward with a business plan of my own creation" (P. Ex. 49).  After Bianchi's March 18, 2006 email, Zinco-Sherman received two additional emails from other members of the former "team" terminating their relationship and threatening litigation (P. Exs. 50, 51).  Action on this threat would irreparably harm Zinco-Sherman's development of the REPLACE™ product, the past investment of Zinco-Sherman, and the business plan of Zinco-Sherman.

    The following orders are entered:

    Defendants' motions to dismiss are denied.

    Defendants Adept Food Solutions, Inc. and Russell Bianchi and their agents, representatives, and employees are enjoined from directly or indirectly using or disclosing the formula for REPLACE™ or working with third parties with respect to reduced sugar formulations that use ingredients of REPLACE™.

Defendants Adept Food Solutions, Inc. and Russell Bianchi and their agents, representatives, and employees are enjoined from directly or indirectly contacting any third parties, companies, and/or persons with respect to the product REPLACE™.

Defendants Adept Food Solutions, Inc. and Russell Bianchi and their agents, representatives, and employees are enjoined from directly or indirectly holding themselves out to be representatives of Zinco-Sherman and from informing others that they have any right, title and ownership in REPLACE™ or that they possess any rights whatsoever in the intellectual property and proprietary information of Zinco-Sherman, Inc.

Defendants Adept Food Solutions, Inc. and Russell Bianchi and their agents, representatives, and employees are enjoined from directly or indirectly formulating any reduced sugar formulations that use any of the ingredients of REPLACE™.

Defendants Adept Food Solutions, Inc. and Russell Bianchi are ordered to return all business plans, emails, and letters of interest relating to Zinco-Sherman or the reduced sugar formulation to Zinco-Sherman, Inc. by forwarding the documents to counsel for Zinco-Sherman, Inc. on or before **April 28, 2006**.

A trial on the application for a permanent injunction is set for **June 12, 2006, at 9:00 a.m.**

Zinco-Sherman is ordered to post a ten thousand dollar ($10,000) bond on or before

**April 24, 2006**.

SIGNED on April 21, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge